UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATRICK GUILLORY,

                                Plaintiff,

      vs.                                          9:11-CV-600
                                                             (MAD/ATB)
KURT ELLIS, *et al*,

                                Defendants.
_____

PATRICK GUILLORY, Plaintiff *pro se*
WILLIAM J. McCARTHY, JR., Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that defendants subjected him to religious discrimination, denial of access to courts, and retaliation for the exercise of his First Amendment Rights, while he was incarcerated at Mid-State Correctional Facility. (Compl.; Dkt. 1). Plaintiff seeks monetary and injunctive relief.

      Presently before the court are two motions filed by plaintiff. (Dkt. Nos. 35, 48). On November 4, 2011, plaintiff filed a motion for a Temporary Restraining Order ("TRO") (Dkt. No. 35), and on December 29, 2011, plaintiff filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 48). On November 15, 2011, plaintiff filed his affidavit and memorandum of law in support of this motion for a TRO, and on November 22, 2011, plaintiff filed a "supplement" to his motion for a

TRO. (Dkt. Nos. 40, 43). Defendants filed a response in opposition to the TRO, and plaintiff filed a reply. (Dkt. Nos. 41, 45). On January 4, 2012, defendants filed a "Response" in opposition to the motion for summary judgment, and on January 18, 2012, plaintiff filed a "Reply." (Dkt. Nos. 49, 53). For the following reasons, this court will recommend denying both motions.

## DISCUSSION

I. **Facts and Procedural History**

The facts forming the basis of plaintiff's complaint were exhaustively reviewed in Judge D'Agostino's September 27, 2011 order,[1] which granted plaintiff's motion to proceed *in forma pauperis* and denied plaintiff's motions for injunctive relief (TROs), appointment of counsel, and for class certification. (Dkt. No. 19 at 40-41). Judge D'Agostino dismissed some of plaintiff's claims "with prejudice" and some "without prejudice with leave to replead." (*Id.*) Plaintiff was informed that if he wished to pursue any of the claims dismissed without prejudice, he would have to file an amended complaint. (*Id.* at 40 n.10). The court allowed the following claims to proceed without amendment:

(1) A First Amendment Free Exercise Clause and Religious Land Use and Institutionalized Persons Act[2] ("RLUIPA") claim against defendant Ready regarding the events of December 7, 2010;
(2) A First Amendment Free Exercise Clause and RLUIPA claim against defendant Ellis regarding the events of March 20, 2011;

---

[1] Judge D'Agostino's order was 42 pages long, and this court assumes familiarity with the facts as stated in that order. The court will only state facts as necessary for this recommendation.

[2] 42 U.S.C. § 2000cc.

(3) A claim that defendant Ready denied plaintiff the right to attend a religious service on December 7, 2010 in retaliation for filing a grievance;
(4) An Equal Protection claim against defendant Ready;
(5) A claim that defendant Kupiec and Marlenga lost or destroyed plaintiff's property in retaliation for filing grievances;
(6) A claim that defendants Kupiec and Marlenga interfered with plaintiff's right to send or receive mail;
(7) A claim that defendants Kupiec and Marlenga denied plaintiff access to the courts, and
(8) Plaintiff's claims against defendants Fischer and Boll (except those claims relating to the allegedly inadequate grievance system).

(Dkt. No. 19 at 41 n.11). On October 4, 2011, plaintiff filed a letter, stating that he agreed with Judge D'Agostino's order with respect to both the claims dismissed with and without prejudice. (Dkt. No. 22). Plaintiff stated that he would not be filing an amended complaint with respect to those claims dismissed without prejudice. (*Id.* at 1). Plaintiff also stated that he would not appeal the denial of his motions for injunctive relief.[3] (*Id.*)

## II.   Injunctive Relief

### A.   Legal Standards

Plaintiff has filed a third motion for a "TRO." (Dkt. No. 35). Generally in order for the court to grant temporary or preliminary injunctive relief, the party seeking the injunction has the burden to show: (i) that it is likely to suffer irreparable injury if the

---

[3] Plaintiff filed two motions for injunctive relief. (Dkt. Nos. 4, 8). Plaintiff labeled these motions as applications for Temporary Restraining Orders ("TRO"), however, a TRO is limited in time, and Judge D'Agostino interpreted these motions for injunctive relief as requesting Preliminary Injunctions. (Dkt. No. 19 at 36). The standards for the issuance of either form of injunctive relief is the same.

3

injunction is not granted, and (ii) either (a) a likelihood of success on the merits of its claim, or (b) the existence of serious questions going to the merits of its claim and a balance of the hardships tipping decidedly in its favor. *D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citation omitted); *Beal v. Stern*, 184 F.3d 117, 122-23 (2d Cir. 1999) (citing *Bery v. City of New York*, 97 F.3d 689, 693-94 (2d Cir. 1996)). As stated by Judge D'Agostino, the purpose of issuing a preliminary injunction is to "preserve the status quo and prevent irreparable harm until the court has the opportunity to rule on the . . . merits." (Dkt. No. 19 at 37) (citations omitted).

**B.     Application**

In his current motion for a "TRO", plaintiff states that after Judge D'Agostino's order, the "defendant" unconstitutionally imposed a "104 hour hunger strike" upon plaintiff and denied him access to Jewish services for a week, while allowing Christians to attend their services. (Dkt. No. 35-1 at ¶¶ 3-7). Plaintiff also believes that one of the facility Rabbis at Gouverneur Correctional Facility (GCF) lost her job because of plaintiff's lawsuit.[4] (Dkt. No. ¶ 13). Plaintiff asks that the "defendants" be prohibited from retaliating against him by denying him food and access to Jewish services, by planting drugs or weapons in his locker, by using force against him, by writing false misbehavior reports against him, and by putting him in the "Box."[5]

Plaintiff is no longer incarcerated at Mid-State, where the events stated in the

---

[4] Plaintiff's reply states that he is not asking for any injunctive relief on behalf of the Rabbi. (Dkt. No. 45 at ¶ 33).

[5] The "Box" is a term for a "Special Housing Unit (SHU)," a form of disciplinary confinement.

complaint are alleged to have occurred. Judge D'Agostino has already denied two of plaintiff's motions for injunctive relief based on his transfer to Gouverneur. The Second Circuit has held that an inmate's request for prospective injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution.[6] *See, e.g., Day v. Chaplin*, 354 F. App'x 472, 473 (2d Cir. 2009) (citing *Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976)); *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (citations omitted).

In this case, plaintiff's third motion for injunctive relief is not directed at the original defendants.[7] Plaintiff argues that although some of the defendants named in his complaint are at Mid-State, two of the defendants, Fischer and Boll, are DOCCS[8] administrators, who could still be subject to an injunction.[9] Plaintiff alleges that he was still being denied food after his transfer, and he was denied food and the ability to

---

[6] Judge D'Agostino based her denial of plaintiff's requests for injunctive relief, in part, on his transfer to GCF. (Dkt. No. 19 at 36-38). Judge D'Agostino also found that plaintiff's transfer removed any possible threat of imminent harm. (*Id.* at 38).

[7] In his reply, plaintiff claims that these are "non-party defendants," (Dkt. No. 45 at ¶ 25) however, non-parties are not defendants. The fact that someone received "notice" of a lawsuit, (assuming that they did), does not make them a party to the lawsuit. An amendment or supplement to the complaint is required for that.

[8] The Department of Correctional Services ("DOCS") is now known as the Department of Corrections and Community Supervision ("DOCCS").

[9] Defendant Brian Fischer is the Commissioner of DOCCS, and Maureen Boll is the Deputy Commissioner. They are not located at Mid-State or any other specific facility. In his reply, plaintiff argues that they are sufficiently "personally responsible" for his alleged deprivations to be subject to the requested injunction. (Dkt. No. 45 at ¶¶ 40-48).

5

attend Jewish services between October 12, 2011 and October 19, 2011,[10] after Judge D'Agostino's order.

However, by the time he filed this third motion, the "new" alleged deprivations were over.[11] In this motion for a TRO, plaintiff is also complaining about the possibility of future "retaliation" based upon this lawsuit.[12] The plaintiff's general fear of future retaliation is too speculative to warrant injunctive relief, regardless of the location of the defendants. *Smolen v. Dildine*, No. 11-CV-6434, *2 (W.D.N.Y. Dec. 5, 2011) (citing *Salvatierra v. Connolly*, No. 09 Civ. 3722. 2010 WL 5480756, at *24)). In his reply papers, plaintiff names a vast number of people who allegedly denied him his constitutional rights, most of whom are not defendants. If additional individuals denied plaintiff his constitutional right to practice his religion, he may

---

[10] Plaintiff claims that unknown individuals, who he states were "defendants," imposed a "hunger strike" on plaintiff for 104 hours. (Dkt. No. 35-1 at ¶ 6). A hunger strike implies that plaintiff chose not to eat for one reason or another. It is unclear what the problem was, but plaintiff has not shown that any particular person, let alone administrative defendants in Albany, denied plaintiff food for 104 hours. Plaintiff claims that defendants Fischer and Boll "approve all transfers," but even if that were true, approval of plaintiff's transfer is not proof of the subsequent denial of religious rights.

[11] Plaintiff includes two memoranda he received after writing letters of complaint regarding his Sukkot Meal. (Pl.'s Ex. E, F). Each memorandum was authored by R. Pine, Superintendent for Program Services. One memorandum was written on October 13, 2011 and the other on October 17, 2011, and each memorandum indicated that "steps have been taken to resolve this matter." (*Id.*) The court understands that the "steps" were not sufficient for him, however, these exhibits do not support the issuance of the injunction that he requests.

[12] Plaintiff states that defendants are retaliating against him for his obtaining a "favorable" decision from Judge D'Agostino. The court notes that Judge D'Agostino's decision, regardless of length, only allowed plaintiff's case to go forward as any other "filing order" would have done. Judge D'Agostino found only that plaintiff stated a claim, sufficient for the case to proceed and to be served on the remaining defendants. There was no finding on the merits of any of plaintiff's claims, other than the basic finding that plaintiff stated a "plausible" claim.

move to supplement his complaint or bring a separate action against individuals at Gouverneur.

In his reply, plaintiff "asks" the court "[h]ow has the defendant proved [sic] that I have not established such entitlement." (Dkt. No. 45 at ¶ 30). The defendant does not have the burden of proof on an application for a TRO or in the case itself. As stated above, the plaintiff bears the burden of proof on such an application. Plaintiff states that he was not "speculating" when he filed the action. While that may be, and regardless of what happens later in the litigation, plaintiff has not met his burden to show that he is entitled to the injunction that he seeks, and this court will recommend denying plaintiff's motion.

## III. <u>Summary Judgment</u>

### A. **Legal Standards**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment." *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987) (citation omitted). A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the

portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56 (c)(1)(A). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-48.

### B. Application

In this case, plaintiff has moved for summary judgment. (Dkt. No. 48). Although defendants have not formally responded, they have submitted a letter, stating that summary judgment is premature because they have not had the opportunity to conduct discovery. Plaintiff responds by stating that he has submitted seventy five (75) exhibits, proving his case. Plaintiff claims that defendants have not "refuted" his material facts. (Dkt. No. 53 at 8; Pl.'s Reply).[13] He also faults the defendants for

---

[13] The court is referring to the pages as numbered by plaintiff at the bottom of the page, not the CM/ECF pages, which are slightly different.

failing to "respond" to the motion for summary judgment and relies upon my order, taking the motion on submission of papers, while stating that "[n]o further submissions are required or allowed except as may be ordered by the court." (Dkt. No. 53 at 3, 5-8; Pl.'s Reply).

Plaintiff may not turn my order into a failure to respond by defendants. Although plaintiff assumes that this court's order denied defendants' extension request, that is not the case. Plaintiff states that although defendants argue that they have not had an opportunity for discovery, "all of the evidence that the defendants will ever get from plaintiff is already upon the record, extremely detailed, and enough to make a prima facie showing of entitlement to judgment as a matter of law." (Dkt. No. 53 at 7). While the court understands that plaintiff has submitted a multitude of exhibits, it is not up to him to determine what the defendants would request in discovery, and discovery includes the ability to take an opposing party's deposition. Fed. R. Civ. P. 30. As discussed below, while plaintiff may have made a sufficient showing for his case to proceed on the remaining claims listed above, that does not mean that plaintiff has made a showing that he is entitled to judgment on those issues, particularly without a response by defendants.

     **1.**    **Religion**

One of plaintiff's remaining claims is that his First Amendment Free Exercise Clause and rights under RLUIPA were violated by defendant Ready as a result of the events of December 7, 2010. On that date, plaintiff claims that notwithstanding plaintiff's name on a call-out list for religious services, defendant Ready refused to

allow plaintiff to attend those services.[14] (Compl. at ¶¶ 37-47).

The court notes that plaintiff's own exhibits show that there is a question of fact regarding these issues. Plaintiff filed a grievance complaining about the December 7, 2010 incident, and he has included a copy of the Superintendent's determination of that grievance. (Compl. Ex. L). The investigation found that there was insufficient evidence to "substantiate any malfeasance by staff." (*Id.*) While plaintiff's allegations may be sufficient to survive past the pleading stage, it is clear that with respect to constitutional and statutory violations, there is a question of fact, at least with respect to defendant's initial conduct. *See Brown v. Graham*, No. 9:07-CV-1353, 2010 WL 6428251, at *14-16 (N.D.N.Y. March 30, 2010) (denying plaintiff's motion for summary judgment on his claims that he was denied his kosher meals for a period of time), *aff'd*, No. 11-1380-pr, 2012 WL 933993 (2d Cir. March 21, 2012).

Judge D'Agostino also allowed plaintiff's claim against defendant Ellis to proceed past the pleading stage. Plaintiff alleges that on March 20, 2011, he was scheduled to see a Rabbi that was coming to Mid-State from Brooklyn for a Purim celebration. (Compl. ¶ 65). Plaintiff claims that the service was scheduled to be one and one half hours, but defendant Ellis cut the service short.[15] Plaintiff attaches to his

---

[14] Plaintiff also alleges various forms of verbal harassment by defendant Ready in conjunction with the incident. (*See, e.g.* Compl. ¶ 40). The court would point out that verbal harassment, no matter how inexcusable it may be, does not rise to the level of a constitutional violation. *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996).

[15] The rest of paragraph 65 of the complaint discusses "class action litigation," but it is clear that Judge D'Agostino denied class certification, thus, the only remaining claim involves defendant Ellis's conduct as it relates to plaintiff alone.

motion a copy of the grievance that he filed regarding this incident. (Dkt. No. 48-1, ¶¶ 19, 20; Dkt. No. 48-2, Ex. A). Plaintiff's grievance expands on the facts of the incident, and the investigation of that grievance indicates that there was an issue regarding the timely arrival of the Rabbis for the Purim Holiday. It is clear from the plaintiff's own submissions that a question of fact remains regarding defendant Ellis's conduct, and plaintiff may not obtain summary judgment for this claim.

### 2. Retaliation

Plaintiff cannot just allege retaliation and obtain a decision in his favor. Plaintiff implies that the fact that the facility took "corrective action" implies that a constitutional violation occurred. The fact that corrective action was taken after a grievance by plaintiff, without more, does not prove that a constitutional or statutory violation occurred. Corrective action may be taken in the face of an error as well as in the face of a more serious violation. The factual circumstances are for a jury to decide. Plaintiff has misinterpreted Judge D'Agostino's order. The fact that plaintiff states a claim does not indicate that he is entitled to summary judgment. It only means that plaintiff's case may proceed on the issues that Judge D'Agostino determined were viable. This is particularly so because plaintiff bears the ultimate burden of proof in a civil case,[16] and in a motion for summary judgment, all factual inferences are drawn in

---

[16] When the court considers a motion for summary judgment, it must be mindful of the underlying standards and burdens of proof. *U.S. S.E.C. v Meltzer*, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (citations omitted). The evidentiary burdens that the respective parties bear at trial will guide the court. *Id.* Where the plaintiff moves for summary judgment, he bears a greater initial burden to show that the evidence supporting his claims is so compelling that no reasonable jury could return a verdict in favor of the defendant. *Id.* (citation omitted).

11

favor of the non-moving party. *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a) (burden in a summary judgment motion)).

The fact that an allegedly adverse action occurred in close proximity to the protected conduct will suffice to prevent dismissal on the pleadings, but will not necessarily prove plaintiff's claim by a preponderance of the evidence. *See Davis v. Goord*, 320 F.3d 346, 352-54 (2d Cir. 2003) (temporal proximity and other factors support an "inference" of retaliation sufficient to survive a motion to dismiss); *Jackson v. Goord*, No. 06-CV-6172, 2011 WL 4829850, at *17 (W.D.N.Y. Oct. 12, 2011) (denying both defendants' motion and plaintiff's cross-motion for summary judgment on the issue of retaliation, notwithstanding temporal proximity of the adverse action to the protected conduct); *Brown v. Graham*, No. 9:07-CV-1353, 2010 WL 6428251, at *16-20 (denying plaintiff's motion for summary judgment on retaliation claims against various defendants). Thus, plaintiff has not sustained his burden to show that he is entitled to summary judgment on his retaliation claims.

### 3. Access to Courts/ Mail Claims

An inmate has the First Amendment right to the free flow of incoming and outgoing mail. *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006). Regulations limiting the right to send and receive mail are valid if "reasonably related to legitimate penological interests." *Id.* (citing *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987) (quoting *Turner v. Safely*, 482 U.S. 78, 89 (1987)). In *Turner*, the Supreme Court held that the court should determine whether the government objective is legitimate and neutral, and then whether there is a valid, rational connection between the prison

regulation or the official action and the legitimate governmental interest that justifies that action. *Turner v. Safely*, 482 U.S. at 89. Finally, the court must determine whether there are alternative means for the inmate to exercise that constitutional right. *Id.* at 90.

It is also well-settled that inmates have a constitutional right to "meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 823 (1977). The Supreme Court held in *Bounds* that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. The Supreme Court later clarified that "[b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The *Lewis* court explained, "the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.*

"Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995). In addition, "to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was

deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff." *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008).

Plaintiff alleges that he requested legal mail to be sent to the Attorney General's Office by certified mail, return receipt requested, but was later informed that the legal mail was not sent as he requested. (Compl. ¶ 67). Plaintiff claims that defendant Kupiec informed plaintiff of this error and directed that plaintiff's funds be reimbursed to him. (Compl. ¶ 68). Plaintiff implies that defendant Kupiec was responsible for the error and should have known that plaintiff's document (a Notice of Intention to File a Claim) was required to be served by certified mail, and thus, caused plaintiff injury to his Court of Claims action. (Compl. ¶ 70).

The fact that defendant Kupiec responded to plaintiff's complaint and obtained a reimbursement for plaintiff does not mean that she was responsible for the error. Obtaining the reimbursement does not show retaliation or malicious interference with the mail. A question of fact still exists. With respect to the Court of Claims action, although plaintiff appears to claim that the defendants caused the "dismissal" of his case, plaintiff includes as an exhibit to his summary judgment motion, a letter he received from the Court of Claims, dated December 9, 2011, stating "[p]lease be advised that the records of this Court indicate that the above numbered claim is open and pending. . . . When your claim is reached for trial, you will be notified by mail as to the date and place of trial." (Pl.'s Ex. V; Dkt. No. 48-2 at 65). The next page of Exhibit V is a "Motion to Dismiss Complaint With Prejudice" that plaintiff filed *himself* in the Court of Claims. (Dkt. No. 48-2 at 66). The motion states that he knows

he cannot win the Court of Claims action because of the defendant's "reckless unconstitutional conduct," and that he was seeking "relief in the . . . U.S. District Court." (*Id.*) Plaintiff cannot ask the Court of Claims to dismiss his action and then blame the defendant for the "injury." If an injury exists, there is at least a question of fact regarding the causation of the injury to plaintiff's legal claim.

Plaintiff also claims that defendant Kupiec lost or destroyed plaintiff's mail (including some test scores that he was being sent) in retaliation for his complaints about his religious rights. (Compl. ¶¶ 67-68). With respect to plaintiff's test scores (not an access to courts issue), plaintiff includes in the exhibits to his motion for summary judgment, a letter from defendant Kupiec, apologizing for tearing the two documents containing the test scores. (Pl.'s Ex. S; Dkt. No. 48-2 at 61). In the letter, defendant Kupiec stated that she thought the documents were advertisements, but as soon as she tore the documents, she realized what they were. (*Id.*). While this may or may not be true, it raises a question of fact with regard to the defendant's motive in tearing the documents. In any event, plaintiff apparently received the documents, albeit in poor condition.

It is also unclear how defendant Marlenga is involved in any alleged First Amendment deprivations. In his complaint, plaintiff alleges that defendant Marlenga is the facility steward who investigates inmate property claims. (Compl. ¶ 78(E)). Plaintiff alleges that defendant Marlenga denies inmates' property claims and then when the inmate decides to sue the state, Marlenga "walks across the hall and notify [sic] defendant Theda Kupiec . . . that plaintiff intends to file a claim . . . 'so just send

15

his Notice of Intention to the Office of the AG by regular mail and not certified mail return receipt because our affirmative defenses from the AG Office and Defendant Boll has [sic] been working." (*Id.*)  Plaintiff then accuses defendants Kupiec and Marlenga of intentionally falsifying reports.  Judge D'Agostino did not dismiss these claims, due to the liberality with which *pro se* claims are treated, however, plaintiff clearly has not sustained his burden of showing that there is no question of fact remaining and that he is entitled to judgment as a matter of law on these issues.

Plaintiff does not point to any evidence upon which he could rely to show that defendant Marlenga "walked across the hall" after she determined that plaintiff wanted to bring an action in the Court of Claims or that the failure to send a document certified mail, return receipt requested was an intentional act aimed at depriving the plaintiff of his access to courts.  Plaintiff has not shown the absence of a genuine issue of material fact with respect to any of his remaining claims, and further discovery will be necessary.

### 4. Supervisory Officials

Judge D'Agostino did not dismiss plaintiff's actions against defendants Boll and Fischer.  These two defendants are supervisory officials.  Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional

deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, 129 S. Ct. 1937 (U.S. 2009).

Because questions of fact remain regarding the individuals who allegedly committed the violations, and defendants' Boll and Fischer's liability depends on the liability of their subordinates, plaintiff has not shown that he is entitled to summary judgment against these two defendants. Plaintiff's motion should, therefore, be denied.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for a TRO (Dkt. No. 35) be **DENIED**, and it is

**RECOMMENDED**, that plaintiff's motion for summary judgment (Dkt. No. 48) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 22, 2012

Hon. Andrew T. Baxter
U.S. Magistrate Judge