# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

PATRICK GUILLORY,

                                        Plaintiff,

            vs.                                         9:11-CV-600
                                                        (MAD/ATB)

KURT ELLIS, *et al*,

                                        Defendants.

PATRICK GUILLORY, Plaintiff *pro se*
ADELE M. TAYLOR-SCOTT, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that defendants subjected him to religious discrimination, denial of access to courts, and retaliation for the exercise of his First Amendment Rights, while he was incarcerated at Mid-State Correctional Facility. (Compl.; Dkt. 1). Plaintiff seeks monetary and injunctive relief.

Presently on the docket, although not all before this court, are seven pending motions. (Dkt. Nos. 119, 122, 123, 139, 140, 144, 145). Plaintiff has filed a motion to reconsider Judge D'Agostino's October 9, 2012 order affirming my orders of June 13, 2012 and September 11, 2012. (Dkt. No. 122). He has filed another motion to compel discovery (Dkt. No. 119); two motions to change venue (Dkt. No. 139, 145); a motion

for recusal[1] (Dkt. No. 140); and a letter-motion requesting a court appearance or in the alternative, an order preventing further retaliation against him (Dkt. No. 144).

Defendants have filed a motion for judgment on the pleadings, and plaintiff has filed a response in opposition to that motion. (Dkt. Nos. 123, 129). On November 8, 2012, Judge D'Agostino stayed plaintiff's motion to compel discovery (Dkt. No. 119) and his motion for reconsideration (Dkt. No. 122). I will discuss plaintiff's motion for recusal before I consider the other issues before me.

## DISCUSSION

I. <u>Recusal</u>

   A.   **Legal Standards**

A federal judge must recuse himself in any proceeding where "his impartiality might reasonably be questioned [or] he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ." *See* 28 U.S.C. § 455. In cases where a judge's impartiality might reasonably be questioned, the issue for consideration is not whether the judge is in fact subjectively impartial, but whether the objective facts suggest impartiality. *See Liteky v. United States*, 510 U.S. 540, 548 (1994). The ultimate inquiry is whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could

---

[1] The motion actually asks for my recusal as well as that of Judge D'Agostino. (Dkt. No. 140). However, I can only address the motion as it relates to me. The disqualification of a federal justice, judge, or magistrate judge is governed by 28 U.S.C. § 455, which specifically states that it is a judge's obligation to "disqualify himself." 28 U.S.C. § 455(a). Consistent with that language, courts uniformly recognize that a motion to recuse is directed to the presiding judge. *See, e.g., In re Certain Underwriter*, 294 F.3d 297, 302 (2d Cir. 2002) (disqualification rests with the presiding judge) (citing *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) (same).

reasonably be questioned." *Hughes v. City of Albany*, 33 F. Supp. 2d 152, 153 (N.D.N.Y.) (Kahn, J.) (quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)), *aff'd*, 189 F.3d 461 (2d Cir. 1999). However, a judge "is as much obliged not to recuse himself when it is not called for as he is obliged when it is." *Drexel*, 861 F.2d at 1312 (citation omitted). The burden is on the party seeking recusal to prove that recusal is required. *Galet v. Carolace Embroidery Co.*, No. 97 Civ. 5702, 1999 WL 38843, at *1 (S.D.N.Y. Jan. 28, 1999).

**B.    Application**

In his motion, plaintiff claims that the judges assigned to this case "knew" that Jewish inmates were being "beaten, starved, and having their property destroyed for simply engaging in protected conduct." (Dkt. No. 140 at 1). He then states that "these reckless Jew haters" had plaintiff's side locks cut off when he had been given permission to wear these locks for three years. (*Id.*) Plaintiff also suggests that any delay in the resolution of his action indicates that the judges are "sitting on the bench eating cheetos doing nothing whatsoever with the exception of kissing all of the defendants' motions." (*Id.*)

Deliberate attempts by a party to insult a judge must not result in recusal. Nor do conclusory allegations of a judge's bias or hatred against particular parties or groups of people warrant recusal. The plaintiff has offered no objective facts to suggest that this court has any personal bias against plaintiff or his religion, or any interest, financial or otherwise, in the litigation. The fact that the court has ruled against plaintiff in certain matters is insufficient to establish that the judge is biased

3

against plaintiff or his religion. *See Clemmons v. Commissioner of Soc. Sec.*, No. 11-CV-1645, 2011 WL 6130926, at *6-7 (E.D.N.Y. Dec. 8, 2011) (judicial rulings alone will almost never constitute a valid basis for a bias or partiality motion); *Farkas v. Ellis*, 768 F. Supp. 476 (S.D.N.Y. 1991) (discussing motions and bases for recusal).

The plaintiff's bizarre allegations have little if anything to do with the issues in this case, and are utterly irrelevant to the issue of whether the assigned judge should be recused. Plaintiff's First Amendment religion claims in this action are limited to two instances in which his right to attend religious services was allegedly restricted, and one instance in which plaintiff claims that Jewish people were treated "differently." This action has nothing to do with the alleged removal of plaintiff's hair, and this court had no way of knowing how plaintiff wore his hair or whether correctional officials were planning on cutting it.[2]

Plaintiff's suggestion that his court intentionally delayed this case to facilitate alleged mistreatment beyond the scope of his complaint, is completely misplaced. This is not the only action, nor the only prisoner civil rights action that requires this court's attention. Plaintiff has filed a multiplicity of motions in this action, many of which were devoid of merit, which substantially contributed to the delays in his case.[3]

---

[2] The court notes that plaintiff has moved for a "court appearance" so that the judges may look at what has been done to his hair, which, again, is completely unrelated to the claims before me. (Dkt. No. 144). To the extent that plaintiff moves for a "court appearance," his motion will be denied.

[3] The docket sheet in this action is currently 23 pages long and contains 147 entries. Approximately 32 of those documents are "motions" by plaintiff that the court has had to, or is now addressing. (Dkt. Nos. 4-6, 8, 16, 22, 35, 44, 48, 51-52, 59, 64-65, 66, 68-69, 81,88, 90, 94, 96, 101-103, 119, 122, 135, 139-40, 144-45). This does not include letters requesting that the court update him on the status of his action or making other requests from the clerk.

The court did grant, at least in part, plaintiff's meritorious motions, such as one of his motions to compel discovery. (Dkt. No. 108). Plaintiff has also filed at least one needless and unauthorized appeal to the Second Circuit, which also delayed his case. Thus, delays in plaintiff's action do not support plaintiff's claim that the court is biased against him or that all the court does is procrastinate and favor defense motions. Therefore, I will deny plaintiff's request to recuse myself from this case and will continue to address the other motions pending before me.

## II. Change of Venue

### A. Legal Standards

In a civil action in which jurisdiction is ***not*** based solely on the diversity of citizenship, venue is proper "only in the judicial district where any defendant resides, if all defendants reside in the same state; where a substantial part of the events or omissions giving rise to the claim occurred or where a substantial part of the property which is the subject of the action is situated; or where any defendant is subject to personal jurisdiction at the time the action is commenced if there is no other district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

The relevant[4] law provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The

---

[4] Section 1404(a) was amended in 2011 to additionally provide for a change of venue to "any district or division to which all parties have consented." 28 U.S.C. § 1404(a). However, the amended section applies only to cases filed or removed after January 6, 2012, thirty days after the effective date of December 7, 2011. The amendment is not applicable to plaintiff's action which was filed on May 31, 2011. In any event, there is no indication that all of the parties would consent to the transfer of this action to either the Eastern or the Southern District as plaintiff requests.

5

decision to transfer is in the discretion of the judge, however, in making this

determination, the court considers:

> (1) the convenience of witnesses, (2) the location of relevant
> documents and the relative ease of access to sources of
> proof, (3) the convenience of the parties, (4) the locus of
> operative facts, (5) the availability of process to compel the
> attendance of unwilling witnesses, (6) the relative means of
> the parties, (7) the forum's familiarity with the governing
> law, (8) the weight accorded plaintiff's choice of forum, and
> (9) trial efficiency and the interest of justice based on the
> totality of the circumstances.

*Wilshire Credit Corp. v. Capital Management Corp.*, 976 F. Supp. 174, 181

(W.D.N.Y. 1997).

The purpose of section 1404 is to have federal civil suits tried in the district

most suitable in terms of convenience, efficiency, and justice. *Garnet Analytics, Inc. v.*

*Diversified Solutions, Inc.*, No. 12-CV-716, 2012 WL 5878664, at *5 (D. Conn. Nov.

21, 2012).  The moving party bears a substantial burden to establish that transfer of

the case is in the interest of justice. *Family Realty & Construction Co., LTD. v.*

*Manufacturers and Traders Trust*, 931 F. Supp. 141, 143 (N.D.N.Y. 1996) (citing

*Lappe v. American Honda Motor Co.*, 857 F. Supp. 222, 229 (N.D.N.Y. 1994), *aff'd*

*sub nom. Lappe v. Honda Motor Co. of Japan*, No. 95-7389, 1996 WL 170209 (2d

Cir. Apr. 11, 1996)).  The court will not transfer a case without a "clear-cut and

convincing[5] showing that the balance of convenience weighs strongly in favor of the

---

[5] It has also been held, albeit in another district, that the burden on the moving party is by a preponderance of the evidence. *See Figgie Internat'l, Inc. v. Destileria Serrales, Inc.*, 925 F. Supp. 411, 413 (D.S.C. 1996) (citation omitted).  However, more recent cases have indicated that the moving party must show that the transferee forum is "clearly more convenient and that a transfer will

transferee court." *Id.* (quoting *Lappe*, *supra*.) (footnote added).

## B. Application

Although plaintiff has filed what appear to be two motions to change venue in this case, it appears from reading the motions that they are both addressed to judges in the Eastern and Southern Districts of New York. (Dkt. Nos. 139, 145). Plaintiff apparently believes that he may ask a judge or judges in the Eastern and Southern Districts to transfer plaintiff's case out of the Northern District of New York. Plaintiff is mistaken in this belief. In his motion, plaintiff does not cite to any case pending in the Eastern or the Southern District in which plaintiff may make his motion.

To the extent that he is asking this court to transfer his case to one of those districts, plaintiff's motion must be denied. The parties to this action are all in the Northern District of New York, the events took place in the Northern District of New York, and the documents and witnesses are all in this district. Plaintiff originally brought this action in the Northern District of New York, and his reasons for transfer have no merit whatsoever; thus, his original proper choice of venue should control. Finally, because all the defendants, witnesses, and documents are in this district, it would be highly inconvenient to transfer this case to a district that is totally unrelated to the original action and where the original action could not have been brought. To the extent that plaintiff's papers may be read as asking this court to transfer the action, it is denied.

---

promote the interests of justice rather than simply shift the inconvenience from one party to the other." *See Warfield Elec. Co., Inc. v. Warfield Electric of Texas, Inc.*, No. 99 C 2901, 1999 U.S. Dist. LEXIS 20160, *6 (N.D. Ill. Dec. 29, 1999) (citations omitted).

## III.    Judgment on the Pleadings

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted). *See* Fed. R. Civ. P. 12(b), 12(c) and 12(h)(2).  The motion for judgment on the pleadings is then treated according to the same standard as a motion under Rule 12(b)(6). *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429-30 (2d Cir. 2011); *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.  *Id.* (citing *Bell Atl. Corp*., 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp*., 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995).  The court must heed its particular obligation to treat *pro se* pleadings with liberality.  *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe,*

171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). With this standard in mind, the court will turn to the individual claims remaining in plaintiff's action.

## IV. Religion Claims

### A. Legal Standards

#### 1. First Amendment

Inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz*, 482 U.S.342 (1987) and *Turner v. Safely*, 482 U.S. 78, 84 (1987). This framework is one of reasonableness and is less restrictive than ordinarily applied to the alleged infringements of fundamental constitutional rights. *Ford*, 352 F.3d at 588.

In *O'Lone*, the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. 482 U.S. at 349 (quoting *Turner*, 482 U.S. at 89). An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord*, 467 F.3d 263, 274 n.4 (2d Cir. 2006) (citations omitted). In *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988), the Second Circuit held that to assess a free exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest."

The court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating that right; and the existence of alternative means of facilitating the exercise of that right that have only a *de minimis* adverse effect on the valid penological interests. *See King v. Bennett*, No. 02-CV-349, 2007 WL 1017102, at *4 (W.D.N.Y. March 30, 2007) (citing *Salahuddin*, 467 F.3d at 274). Finally, once prison officials state a legitimate penological interest to justify their actions, the burden shifts to plaintiffs to show that the defendants' concerns are "irrational." *Ford*, 352 F.3d at 595.

## 2. Religious Land Use and Institutionalized Persons Act

RLUIPA provides that

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, the plaintiff bears the burden of showing that his religious exercise has been burdened and that the burden is substantial. *Marria v. Broaddus*, 200 F. Supp. 2d 280, 297 (S.D.N.Y. 2002) (citing 42 U.S.C. § 2000cc-2(b)). The burden then shifts to the government to show that the burden furthers a compelling governmental interest **and** that it is the ***least restrictive*** means of achieving that interest. *Id.* The act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

A "substantial burden" is one that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (citing, *inter alia, Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). Inconvenience alone is insufficient to establish a substantial burden. *Id.* (citing *Westchester Day School v. Village of Mamaroneck*, 379 F. Supp. 2d 550, 557 (S.D.N.Y. 2005)). Furthermore, the substantial evidence test presupposes that some inconveniences may be so minor that they do not amount to a violation. *See*

*McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004) (discussing in a footnote the applicability of the "time-honored maxim '*de minimis non curat lex*'"). However, the court should not attempt to engage in resolving disputes as to whether a particular practice is "central" or "mandatory" to a particular religion in determining whether a burden was substantial. *See Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003) (discussing First Amendment protections).

## B.    Application

With respect to plaintiff's first two claims, defendants argue that one instance of interference with a religious service does not state either a First Amendment or a RLUIPA claim. Defendants cite two cases for this proposition. *See Wagnoon v. Gatson*, No. 00 Civ. 3722, 2001 WL 709276, at *8 (S.D.N.Y. June 25, 2001); *Troy v. Kuhlmann*, No. 96 Civ. 7190, 1999 WL 825622, at *15 (S.D.N.Y. Oct. 15, 1999).[6] Neither of these cases supports the defendants argument for dismissal.

In *Wagnoon*, plaintiff alleged that one defendant interfered with plaintiff's midday prayers on one occasion, ordering him to return to the yard area where he had been working. 2001 WL 709276, at *3. There were no more facts discussed by the court in support of plaintiff's claim in *Wagnoon*. In *Troy*, plaintiff claimed that the defendant was assigned the duty of escorting inmates to their religious services. 1999 WL 825622, at *14. The *Troy* defendant was also responsible for responding to emergency calls, and while en route to escorting plaintiff to his services, the defendant received, and responded to, and emergency call, which prevented him from bringing

---

[6] *Wagnoon* is attached to defendants' motion papers as Ex. C, and *Troy* is attached as Ex. A. (Dkt. No. 123-4, 123-1).

plaintiff to his services. *Id.* Thus, plaintiff missed one religious service, and plaintiff alleged that this conduct deprived him of his First Amendment rights. In granting ***summary judgment***, the court stated that "courts in the Second Circuit have held that an inmate's right to practice his religion is not substantially burdened if an inmate missed one religious service for ***a valid reason***." *Id.* (emphasis added).

This case is factually distinguishable from both of the above actions. While it may be true that in many cases, if plaintiff misses one religious service, there is no constitutional or statutory violation. However, the *Troy* court was considering a motion for summary judgment and qualified that proposition with the phrase "for a valid reason." In *Wagnoon*, while the court was considering a motion to dismiss for failure to state a claim, plaintiff's prayer was merely interrupted on one occasion.

In this case, plaintiff alleges, ***two*** days on which he was not allowed to attend services, albeit by two different defendants. The more important difference in this case is that plaintiff alleges that the reason for the denial of religious services was not "valid." In fact, plaintiff alleges that on December 7, 2011, defendant Ready affirmatively prevented plaintiff from attending a service when plaintiff was on the call-out list, while making disparaging remarks about his religion. Plaintiff also alleges that defendant Ready prevented plaintiff from attending the service on December 7, 2010 in retaliation for having filed a successful grievance against defendants Johnston and Ellis. Although this is also a separate claim of retaliation, the claim supports an inference, based only on the facts asserted in the complaint, that the denial of the religious service on December 7, 2010 was willful.

13

In *Shakur v. Selsky*, 391 F.3d 106, 110-20 (2d Cir. 2004), the Second Circuit held that the plaintiff inmate stated a First Amendment claim where he alleged that corrections officers maliciously and intentionally prevented him from attending an important religious feast and rejected the argument that missing one religious feast was "de minimis." In *Mills v. Fischer*, No. 11-276, 2012 WL 4215891, at *1-2 (2d Cir. Sept. 21, 2012), the court stated that where plaintiffs alleged only rudeness, but not malice, they would fail to state a plausible claim. To his complaint in this action, plaintiff attached the earlier grievance that he claims was the cause of defendant Ready's retaliatory behavior. (Dkt. No. 1 at 42-43, 45).

While it is unclear how plaintiff's claims would fare after a well-supported summary judgment motion, Judge D'Agostino found that plaintiff's complaint stated a claim for a violation of his First Amendment and RUILPA rights when she initially reviewed the complaint. Based upon plaintiff's allegation that the defendants intentionally prevented him from attending services, and at least once, engaged in that conduct in retaliation for plaintiff filing a grievance, this court cannot recommend dismissal for failure to state a claim.[7]

The March 20, 2011 incident involving defendant Ellis also may not be dismissed purely for failure to state a claim. Plaintiff alleges that he was scheduled to meet with Rabbis from Brooklyn for celebration of the Purim holiday for one and one half hours, but defendant Ellis intentionally terminated the service after a matter of

---

[7] Plaintiff has attached a CORC decision from April 13, 2011 to his complaint. (Dkt. No. 1 at 58). The court notes that the CORC found that the December 7, 2010 incident was an "isolated incident," but this finding is not controlling without additional information or affidavits from defendants.

minutes. Judge D'Agostino found that "construed liberally," these facts stated a "plausible claim" against defendant Ellis. (Dkt. No. 19 at 22). In a footnote, Judge D'Agostino cited *Shakur* for the proposition that a court should not dismiss a case "sua sponte" even if plaintiff alleged the interference with only one feast. (*Id.* at 22 n.8). At this point, the court has no more information about the facts in this case than it had at the time the complaint was first filed, and defendants have alleged only that one incident is insufficient to state a First Amendment or RLUIPA claim. Because there is case law, holding that the facts of the incident can determine whether a violation has occurred, the court will recommend denying defendants motion for judgment on the pleadings as to both the First Amendment and the RLUIPA claims against defendants Ellis and Ready, including plaintiff's separate claim against defendant Ready, alleging that his actions were in retaliation for plaintiff's earlier grievance.[8]

## V.     **Equal Protection**

### A.     **Legal Standards**

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.'" *Engquist v. Or. Dep't of Agric.*, 533 U.S. 591, 601 (2008). To establish an

---

[8] This court makes no ruling or recommendation regarding whether the case would survive a properly supported motion for summary judgment, which could include affidavits from defendants.

equal protection violation, the plaintiff must show that the defendants applied a different standard to similarly situated individuals. *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 111 (2d Cir. 2006). Plaintiff must first show that he was treated differently than others similarly situated because of intentional or purposeful discrimination. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Then, plaintiff must show that the difference in treatment cannot survive the appropriate level of scrutiny. *Id.*

### B. Application

Plaintiff simply alleges that defendant Ready treated inmates of the Jewish religion differently than he treated those of other religions. (Compl. ¶ 40). While Judge D'Agostino allowed this particular claim to proceed at that "early stage," she noted that the allegations were "very sparse." (Dkt. No. 19 at 26). The fact that Judge D'Agostino allowed this claim to proceed does not guarantee that the claim will survive a motion to dismiss. Sua sponte dismissals are disfavored because the defendant is not required to answer, and plaintiff never has the opportunity to be heard in opposition. *See Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999) (sua sponte dismissal permitted in some circumstances, but disfavored). *See also Johnson v. Burge*, No. 11-2563, 2012 WL 6621308, at *2 (2d Cir. Dec. 20, 2012) (it is bad practice for a district court to dismiss without affording plaintiff the opportunity to be heard in opposition).

In his opposition to the motion for judgment on the pleadings, plaintiff states that Judge D'Agostino already found that he pleaded the Equal Protection claim

sufficiently, and to hold otherwise would be to overrule her order and to act inconsistently with the controlling law. (Dkt. No. 129 at 11-14). Plaintiff states that he has given defendants sufficient notice of what plaintiff is claiming against them. However, this court cannot agree. As stated above, an Equal Protection claim must state that the defendants applied a different standard to similarly situated individuals. In *Ashcroft*, the Supreme Court stated that although the pleading standard does not require "detailed factual allegations," it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." 556 U.S. at 677. Furthermore, a complaint does not suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

Plaintiff's Equal Protection argument is one such claim. Although he alleges that defendant Ready treated Jewish inmates "differently," there is no indication of what plaintiff meant by that and how they were treated differently. Plaintiff still does not elaborate in his response to defendants motion. He has not even cited one instance in which another religion was treated "differently" by defendant Ready. Essentially, plaintiff makes a "naked" assertion that has no factual "enhancement" and should be dismissed. It is unclear how defendant Ready would be able to respond to a claim of unequal treatment if he does not know to what unequal treatment plaintiff refers, when it occurred, or who was responsible. Plaintiff must remember that he is suing individuals, and that the defendant must have had *personal responsibility* for the conduct making up plaintiff's claim. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

The Equal Protection claim, as it stands may not survive the motion for judgment on the pleadings. However, if the court adopts this recommendation, plaintiff may be given the opportunity to propose an amendment that would allege any specific instance in which he was treated differently, than any other inmate, under the same circumstances because plaintiff was Jewish.[9]   Plaintiff may move to amend to add the specific factual circumstances that lead him to believe that an inmate of another religion was treated in a more advantageous manner because of his religion.

## VI.    Mail/Access to Courts/Retaliation

### A.    Legal Standards

#### 1.    Mail

Among the protections enjoyed by prison inmates, subject to appropriate limitations, is the right "to the free flow of incoming and outgoing mail" guaranteed by the First Amendment. *LeBron v. Swaitek*, No. 05-CV-172 (GLS/DRH), 2007 WL 3254373, at *6 (N.D.N.Y. Nov. 2, 2007) (Sharpe, J.) (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)). "The boundary between an inmate's First Amendment right to free speech and the ability of prison officials to open or otherwise interfere with an inmate's mail is not precise." *Cancel v. Goord*, No. 00 CIV 2042, 2001 WL 303713, at *5 (S.D.N.Y. March 29, 2001). This right, however, must yield to the legitimate penological interests of prison officials when mail is monitored for the

_____

[9] The court notes that plaintiff's Equal Protection claim is based upon his allegation that defendant Ready told plaintiff on December 7, 2010, that Ready was not calling the Sergeant for plaintiff "or any other Jew." (Compl. ¶ 40). While, if true, this statement may indicate that defendant Ready did not like Jewish people, it does not follow that defendant treated those of another religion differently.

purpose of ensuring order in the prison by preventing illegal activities. *Duamutef v. Hollins*, 297 F.3d 108, 112–13 (2d Cir. 2002) (citing, *inter alia*, *U.S. v. Workman*, 80 F.3d 688, 699 (2d Cir.1996)). "The [Supreme] Court has counseled judicial restraint in the federal courts' review of prison policy and administration, noting that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' " *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir.1995) (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

Actions taken by prison administrators directed toward inmate mail are subject to the overarching consideration that a prison regulation infringing on an inmate's constitutional rights is valid so long as the regulation is "reasonably related to the legitimate penological interests." *Turner v. Safley*, 482 U.S. at 89. Applying this precept, "[c]ourts have constitutionally afforded greater protection . . . to outgoing mail than to incoming mail." *Davis*, 320 F.3d at 351 (citations omitted). Nonetheless, the Second Circuit has held that "'where good cause is shown, outgoing mail can be read' without violating inmates' First Amendment rights." *Workman*, 80 F.3d at 698 (quoting *Wolfish v. Levi*, 573 F.2d 118, 130 n. 27 (2d Cir.1978), *rev'd in part on other grounds sub nom.*, *Bell v. Wolfish*, 441 U.S. 520 (1979)).

Prison security is a legitimate penological interest that justifies limitations on an inmate's First Amendment rights related to regular mail. *See Cancel v. Goord*, 2001 WL 303713, at *6. "[T]he interception of a prisoner's correspondence does not violate that individual's First Amendment rights 'if prison officials had good or reasonable cause to inspect the mail.'" *Knight v. Keane*, No. 99 Civ. 3955, 2005 U.S.

Dist. LEXIS 18702, at *18 (S.D.N.Y. August 26, 2005) (citing *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998) (Report-Recommendation), *adopted* 2006 WL 89929 (S.D.N.Y. Jan. 12, 2006). Legal mail is entitled to a higher degree of protection than regular mail, and "prison policies or practices which interfere with legal mail on a regular basis whether incoming or outgoing must be supported by a legitimate penological interest other than mere general security concerns which permit interference with regular mail. *Cancel v. Goord*, 2001 WL 303713, at *6-7 (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).

## 2. Access to Courts

Legal mail claims are sometimes related to claims that defendants have denied an inmate access to courts by interfering with legal mail. It is well-settled that inmates have a constitutional right to "meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 823 (1977). The Supreme Court held in *Bounds* that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828.

"Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995). In addition, "to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was

deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). *See Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008). In order to show actual injury, the defendants' conduct must have "hindered [plaintiff's] efforts to pursue a legal claim." 518 U.S. at 351.

### 3. Retaliation

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004).

The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Id*. at 381 (citations omitted). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137 (citation omitted). Accordingly, plaintiff must set forth non-conclusory allegations. *Id.* Even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they

would have taken the adverse action even in the absence of the protected conduct. *Id.* (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)). Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

### B.    Application

Plaintiff alleges that after he filed a grievance against defendant Ready, which was denied on January 14, 2011, defendants Kupiec and Marlenga began to lose and/or destroy plaintiff's packages that were received in the mail room. (Compl. ¶ 57). Although defendants argue that plaintiff has not stated a First Amendment claim against Kupiec or Marlenga for denial of access to courts, defendants do not address the retaliation claim with respect to these two defendants, relating to any of his mail claims.  Without further establishment of the facts in this case, including affidavits by defendants, this court is presented with nothing more that the facts as stated by plaintiff in his complaint, together with any attachments therein.  If defendants began destroying or interfering with plaintiff's mail, legal or otherwise, in retaliation for plaintiff's grievances, then plaintiff has stated a constitutional claim, even if standing alone, the interference with mail or alleged destruction of property would not have risen to the level of a constitutional violation.  Thus, this court will not recommend dismissal of any of the mail claims against defendants Kupiec and Marlenga.

In making this recommendation, the court does not make any rulings regarding whether these claims would withstand a properly supported motion for summary

judgment.

## VII. __Personal Involvement__

### A. __Legal Standards__

As stated above, personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. __Application__

Defendants argue that plaintiff has not shown the personal involvement of

either defendant Fischer, the Commissioner of the Department of Corrections and Community Supervision ("DOCCS") or defendant Boll, Counsel to DOCCS. Judge D'Agostino found that at that early stage of the proceeding, plaintiff's allegations, "while rather sparse" against the supervisory defendants, were sufficient to justify keeping them in the action and requiring a response.

In plaintiff's response to defendants' motion, he claims that he has "so many documents from Fischer and Boll that [he] can flood the docket." (Dkt. No. 129 at 22). The mere receipt of a letter or similar complaint is insufficient to constitute personal involvement; otherwise, a plaintiff could create personal involvement by any supervisor simply by writing a letter. *See Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002). In order for a letter to suffice to establish personal involvement, plaintiff would have to show that the supervisor conducted a personal investigation or personally took action on the letter or grievance. *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009); *Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004). However, personal action does *not* include referring the letter to a subordinate for investigation. *Id.* (citing *Sealy v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)); *Hartnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008).

Plaintiff's response implies that he can make the appropriate showing. Because this court is recommending that this action proceed at least to a properly supported motion for summary judgment, the court will not recommend dismissing the action as against defendants Fischer and Boll based on lack of personal involvement. Even if the court recommended dismissing based on failure to state a claim, plaintiff would

generally have the opportunity to move to amend his complaint to state the requisite facts. *See Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000) (a district court should not dismiss a pro se complaint on the pleadings without granting leave to amend ***at least once*** when a liberal reading of the complaint gives any indication that a valid complaint may be stated).[10]

     **WHEREFORE**, based on the findings above, it is

     **ORDERED**, that plaintiff's motion to recuse this court (Dkt. No. 140) is **DENIED**, and it is

     **ORDERED**, that to the extent plaintiff's motions to change venue (Dkt. Nos. 139, 145) are directed at this court, they are **DENIED**, and it is

     **ORDERED**, that plaintiff's motion for a "court appearance" (Dkt. No. 144) is **DENIED**, and it is

     **RECOMMENDED**, that defendants' motion for judgment on the pleadings (Dkt. No. 123) be **GRANTED ONLY AS TO THE EQUAL PROTECTION CLAIM AS AGAINST DEFENDANT READY**, and the complaint be **DISMISSED WITHOUT PREJUDICE AS TO THE EQUAL PROTECTION CLAIM**, and it is

     **RECOMMENDED**, that defendants' motion for judgment on the pleadings (Dkt. No. 123) be **DENIED IN ALL OTHER RESPECTS**, and it is

     **RECOMMENDED**, that if the court accepts this Recommendation, the stay be lifted, and that the defendants be Ordered to respond to plaintiff's motion to compel

---

[10] If the plaintiff decides to move to amend his complaint, in an attempt to remedy the defects in his Equal Protection claim, he may wish to consider amending his allegations with respect to the personal involvement of defendants Fischer and Boll.

(Dkt. No. 119) within 21 days of the decision on this Report-Recommendation.[11]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: April 3, 2013

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[11] Lifting the stay may also affect plaintiff's motion for reconsideration (Dkt. No. 122), but that motion is before Judge D'Agostino and she can direct how, if at all, that motion will proceed.